# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 28, 2014

## PAUL WALLACE DINWIDDIE, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 96998     Jon Kerry Blackwood, Judge**

---

**No. E2013-01472-CCA-R3-PC - Filed March 4, 2014**

---

Paul Wallace Dinwiddie, Jr. ("the Petitioner") sought post-conviction relief from his convictions of aggravated rape and aggravated sexual battery on the basis of ineffective assistance of counsel. After an evidentiary hearing, the post-conviction court denied relief, and this appeal followed. After a thorough review of the record and the applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Albert J. Newman, Jr., Knoxville, Tennessee, for the appellant, Paul Wallace Dinwiddie, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Randy Nichols, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

A jury convicted the Petitioner of two counts of aggravated rape and two counts of aggravated sexual battery, and the trial court imposed an effective sentence of forty-five years. On direct appeal, this Court affirmed the Petitioner's convictions but ordered that the two convictions of aggravated rape be merged "into one conviction judgment" and that the two convictions of aggravated sexual battery be merged "into one conviction judgment." State v. Paul Wallace Dinwiddie, Jr., No. E2009-01752-CCA-R3-CD, 2010 WL 2889098,

at *1 (Tenn. Crim. App. July 23, 2010), perm. app. denied (Tenn. Oct. 15, 2010). This Court affirmed the Petitioner's effective sentence. Id. at *14. The Petitioner subsequently filed for post-conviction relief, alleging that he had received ineffective assistance of counsel at trial. After an evidentiary hearing, the post-conviction court denied relief. The Petitioner now appeals that ruling.

In order to place the post-conviction proof into context, we briefly will summarize the proof adduced at trial. See id. at *1-6. The victim testified that she worked as a personal trainer and as a physical therapist assistant. She lived in a ground-floor apartment. On the night of October 22, 2006, she was awakened "[b]y a man's voice and a towel over [her] face." Id. at *1. The man called her by name, told her not to scream, and threatened her with a knife. The man digitally penetrated her, performed oral sex on her, and kissed her breasts. He then masturbated and ejaculated onto the towel covering her face. Concerned that he had dropped his lighter, the man turned on the lights. The victim peeked from beneath the towel and saw "a balding white man." Id. at *2. Eventually, the man left. The victim later described him as wearing denim jeans and a belt, a cotton shirt, and weighing approximately 190 pounds with a "beer belly." Id. He smelled of cigarette smoke. Law enforcement collected a note at the victim's apartment that read, "Hi. I'm shy and would love to meet you. Please write at [electronic address omitted]; P.S., for a good time." Id. at *3. Law enforcement also collected some long and short dark and blonde hairs that the victim stated she found on her hand after the attack.

A hand towel and condom found near the dumpster at the victim's apartment complex were swabbed for DNA. DNA collected from the towel and condom were from the same contributor but did not match the Petitioner. DNA collected from the victim's breasts matched the Petitioner.

The Petitioner was arrested at his mobile home. Inside, officers found ashtrays, cigarette lighters, and a pack of cigarettes.

The Petitioner's sister testified that the Petitioner had lived with her for six of the previous eight years. She stated that he did not smoke cigarettes but that he did smoke marijuana. She explained that she was a smoker and that the Petitioner allowed her to smoke in his home. He also had friends that smoked in his home. She stated that the Petitioner did not wear belts and that he kept his head shaved. She also produced a 1966 photograph of the Petitioner which showed him with blonde hair.

At the post-conviction hearing, only the Petitioner testified. He explained that he had been represented by appointed counsel ("Trial Counsel") and that they met approximately six times. Their meetings lasted about thirty minutes each. He explained to Trial Counsel

2

that he had not committed the crimes against the victim, that she had been an escort, and that she had come to his room at the InTown Suites Apartments on Kingston Pike. Trial Counsel advised him against testifying because of his criminal record.

At trial, the victim did not identify him as her assailant, and there were no other eyewitness identifications. His defense to the DNA match, he testified, was "[t]hat when she came to my hotel, I paid her for sex. And I did suck her breast at that time." This transaction occurred at about 11:00 p.m., before the victim was raped at her apartment.

The Petitioner testified that Trial Counsel failed to challenge "properly" the State's evidence. Specifically, Trial Counsel did not have admitted into evidence a cast of a footprint found outside the victim's apartment window so that Trial Counsel could demonstrate that the cast did not match the pair of boots recovered from the Petitioner; Trial Counsel did not call sufficient witnesses to testify that the Petitioner did not smoke but that others smoked at his residence; Trial Counsel did not have cigarette butts tested for DNA to demonstrate that the Petitioner's DNA was not on them; Trial Counsel did not call sufficient witnesses to testify that the Petitioner had "no hair"; and Trial Counsel did not adduce proof that the handwriting and e-mail address contained in the note found on the victim's door were not the Petitioner's. Trial Counsel also failed to establish the victim's profession as an escort.

On cross-examination, the Petitioner acknowledged that his sister had testified at trial that the Petitioner had been living with her at the time of the crimes and that the Petitioner could not have committed the crimes because she would have heard him if he had left her house. The Petitioner explained that his sister was incorrect about his location at the relevant time but acknowledged that she had provided him with an alibi during her testimony at the trial. His sister also testified that he did not smoke.

He did not recall stating during his interview with the police that he did not know the victim. He maintained that he contacted the victim as an escort, that she came to his room, and that she performed consensual oral sex, only. He recalled that there had been photographs of him introduced at trial that showed him with hair. He asserted that these photographs were "several years old" and that the hair in the photographs was blonde, not brown.

After hearing this proof, the post-conviction court denied relief, concluding that "the gravamen of petitioner's allegations are addressed to the sufficiency of the evidence and he does not specifically point out how his counsel was ineffective." The Petitioner argues to this Court that the post-conviction court should have granted him relief.

**Analysis**

*Standard of Review*

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

*Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[1] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to

---

[1] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

4

his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688). Our Supreme Court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)).

When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the

5

outcome." Pylant, 263 S.W.3d at 869 (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

*The Petitioner's Claim*

We agree with the post-conviction court that the Petitioner failed to establish by clear and convincing evidence that Trial Counsel performed deficiently. The primary thrust of the Petitioner's proof consisted of allegations that Trial Counsel failed to adduce evidence in support of the defense theory. However, the Petitioner did not call at the post-conviction hearing any of the witnesses that he claimed could have testified in his favor at trial, nor did he adduce the footprint proof, the DNA proof, or the handwriting proof that he claimed Trial Counsel should have elicited at trial. The Petitioner also did not adduce any proof other than his own testimony that the victim had been a professional escort.

This Court has made clear that a claim of ineffective assistance of counsel arising from the failure to call a witness must be supported by testimony from the witness at the post-conviction hearing. See, e.g., Denton v. State, 945 S.W.2d 793, 802-03 (Tenn. Crim. App. 1996); Wade v. State, 914 S.W.2d 97, 102 (Tenn. Crim. App. 1995); Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990); see also Pylant, 263 S.W.3d at 869. Without the alleged witnesses' testimony, there is no way for the post-conviction court (or this Court) to evaluate whether the trial lawyer was deficient in failing to adduce the alleged testimony, or to evaluate whether the absence of the testimony from trial had a prejudicial effect on the outcome. The same analysis applies to other proof that a petitioner claims should have been adduced at trial but which he or she does not present at the post-conviction hearing.

Accordingly, we hold that the Petitioner failed to establish by clear and convincing evidence that he is entitled to post-conviction relief on the basis of ineffective assistance of counsel. Therefore, we affirm the post-conviction court's denial of post-conviction relief.

**Conclusion**

The judgment of the criminal court is affirmed.

_____
JEFFREY S. BIVINS, JUDGE